David R. King
dking@herrick.com
Leah Kelman
lkelman@herrick.com
HERRICK FEINSTEIN LLP
One Gateway Center
Newark, New Jersey 07102
(973) 274-2000

Richard S. Mandel (to be admitted *pro hac vice*)
Jonathan Z. King (to be admitted *pro hac vice*)
COWAN, LIEBOWITZ & LATMAN, P.C.
114 West 47th Street
New York, NY 10036
(212) 790-9200

Attorneys for Plaintiffs
Promotion In Motion, Inc. and Welch Foods Inc., A Cooperative

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

-------------------------------------------------------------x

PROMOTION IN MOTION, INC., and
WELCH FOODS INC., A COOPERATIVE

                Plaintiffs,

   v.

KERVAN USA LLC,

                Defendant.

20-CV-

**COMPLAINT**

-------------------------------------------------------------x

      Plaintiffs Promotion In Motion, Inc. ("PIM") and Welch Foods Inc., A Cooperative ("Welch"), by and through their undersigned attorneys, as and for their Complaint in this action against Kervan USA LLC ("Kervan"), having an address at 1139 Lehigh Ave., Suite 300 C, Whitehall, Pennsylvania 18052-5518, allege as follows:

## NATURE OF THE ACTION

1. Plaintiffs bring this action for trade dress infringement, false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. § 1051 et seq., and corresponding state law, and for breach of contract, to halt Defendant's infringement of the distinctive and highly recognizable packaging trade dress for the market-leading WELCH'S FRUIT SNACKS product.

## PARTIES

2. PIM is a Delaware corporation with a principal place of business at 25 Commerce Drive, Allendale, New Jersey 07401. PIM is in the business of developing, manufacturing, marketing, and distributing branded confectionery, snack and candy products.

3. Welch is a Michigan cooperative corporation with a principal place of business at 300 Baker Avenue, Suite 101, Concord, MA 01732. Welch is the cooperative marketing arm of the National Grape Co-Operative Association, a cooperative of grape farmers. Welch manufactures and markets grape juices and other food and beverage products.

4. Upon information and belief, Defendant Kervan is a Pennsylvania limited liability company with a principal place of business at 1139 Lehigh Ave., Suite 300 C, Whitehall, Pennsylvania 18052-5518. Upon information and belief, Kervan is in the business of manufacturing and importing various candy products for sale in the United States.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C §§ 1331 and 1338, and pursuant to principles of supplemental jurisdiction.

6. This Court has personal jurisdiction over Kervan because, upon information and belief, it is doing business in New Jersey, has committed tortious acts within New Jersey by selling the infringing products from which this dispute arises in this jurisdiction and has

consented to jurisdiction in this Court with respect to disputes arising out of the Settlement Agreement.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) and (c).

## FACTS

**The Successful and Famous WELCH'S FRUIT SNACKS Product and Trade Dress**

8. In developing its own proprietary candy brands, PIM expends great effort in creating appealing and distinctive recipes, formulas, product attributes, shapes, graphics, brand names and packaging to distinguish its products in the marketplace.

9. One of PIM's most successful products is WELCH'S FRUIT SNACKS, which was introduced in 2001. WELCH'S FRUIT SNACKS is the market leader in its category and is widely familiar to millions of consumers in the United States.

10. PIM markets its WELCH'S FRUIT SNACKS pursuant to an exclusive license from Welch, which has granted PIM the exclusive right to use the WELCH'S trademark and variations on that mark in connection with fruit snacks.

11. WELCH'S FRUIT SNACKS boasts a unique and appealing recipe, flavor profile, trade dress and packaging design, each of which distinguishes the product in the marketplace.

12. Unlike many other branded fruit snack products, WELCH'S FRUIT SNACKS is made with real fruit and is based on a sophisticated recipe and preparation that provide a better quality taste and texture than competitive products. This closely guarded recipe and flavor profile give PIM's product a competitive edge in the marketplace.

13. WELCH'S FRUIT SNACKS also uses a distinctive and now famous trade dress and packaging design, which has consisted of the same primary elements and carried the same basic overall look since inception ("the WELCH'S FRUIT SNACKS Trade Dress"). While the product is sold in various different box, bag and flavor configurations, the WELCH'S FRUIT

3

SNACKS Trade Dress is consistent across these various packages and serves to identify and distinguish the product as the highest quality fruit snacks available. As set forth below, while keeping the same critical trade dress elements that consumers use to recognize the brand, the WELCH'S FRUIT SNACKS Trade Dress also appears in holiday versions that add holiday-themed imagery to correspond to certain sales seasons.

14. The WELCH'S FRUIT SNACKS Trade Dress is the amalgam of many different elements that feature a white central panel or box with the term "Fruit Snacks" in blue lettering centered over a curved arc, all surrounded by a contrasting colored background. The white panel is also surrounded by a lined blue edging, and a stacked and photorealistic assortment of fruit items extending out along the right and left edges and bottom of the panel. The top of the package uses the tagline "Fruit is our 1st Ingredient!," while the phrase "Family Farmer Owned" appears directly beneath the WELCH's brand name.

15. The most popular and best performing version of the product is WELCH'S MIXED FRUIT FRUIT SNACKS, which boasts unequaled sales per point of distribution in the grocery retail channel and is the single best performing item in the entire fruit snacks category. Consistent with the WELCH'S FRUIT SNACKS Trade Dress, WELCH'S MIXED FRUIT FRUIT SNACKS is sold in various sized boxes and bags featuring the familiar elements described above. A copy of the WELCH'S FRUIT SNACKS Trade Dress for the WELCH'S MIXED FRUIT FRUIT SNACKS is depicted below:



16.     Other versions of WELCH'S FRUIT SNACKS feature the same basic trade dress with modest adjustments in background color and the depicted fruit.  For example, the popular WELCH'S BERRIES 'N CHERRIES FRUIT SNACKS and WELCH'S FRUIT PUNCH FRUIT SNACKS feature a graphically similar design, with only changes to the background color and particular fruit depicted.  Examples of bags of these products appear below:

 

18166/038/3666634.3
HF 13625526v.1

17. The holiday-themed version of the WELCH'S FRUIT SNACKS Trade Dress carries forward the brand's key visual presentation, such as the central white panel and central display of the vertically stacked words "FRUIT SNACKS" in blue lettering. It replaces the fruit located along the sides of the package with Christmas-shaped individual fruit snack pieces, and adds other holiday imagery, including evergreen branches, as shown below:

 

18. The WELCH'S FRUIT SNACKS Trade Dress is inherently distinctive and non-functional. As evidenced by the numerous third party products that use an entirely different graphic design, the WELCH'S FRUIT SNACKS Trade Dress represents a series of arbitrary, artistic design choices creating a unique overall selling image and brand presentation that serve to identify WELCH'S FRUIT SNACKS and distinguish the products from others in the marketplace.

19. WELCH'S FRUIT SNACKS has been a consistent and stunning commercial success since the product was first introduced. PIM's sales of Welch's Fruit Snacks at the wholesale level exceeded $375 million in calendar year 2019, during which more than 2 billion packs were sold. Since the brand's introduction, PIM has sold more than $2 billion of the product at wholesale.

20. PIM aggressively promotes WELCH'S FRUIT SNACKS through various media. It attends numerous trade shows every year, and advertises the product in national magazines, newspaper free standing inserts, billboards, in-store signage, social media (Facebook, Instagram, Twitter, YouTube), various websites, theme parks and more. WELCH'S FRUIT SNACKS frequently appears in magazines, web blogs, and television news segments in connection with trends in snacking. Since 2015, PIM has expended approximately $50 million dollars in promoting the brand.

21. In virtually all advertisements and promotions, the WELCH'S FRUIT SNACKS Trade Dress is prominently depicted, because it serves as such a strong source identifier.

22. WELCH'S FRUIT SNACKS is also heavily promoted by major retail chains of all types in their own widely circulated weekly flyers reaching tens of millions of consumers weekly. Retailers for WELCH'S FRUIT SNACKS advertise the product in mailers, print ads, online and various other media, and also offer various promotional offers and discounts to stimulate sales of the product. And again, such advertisements invariably depict the product itself, so that the familiar the WELCH'S FRUIT SNACKS Trade Dress is displayed time and again to consumers.

23. WELCH'S FRUIT SNACKS is distributed, sold, marketed and promoted through virtually all available trade channels and reaches millions upon millions of consumers on an ongoing basis. These trade channels include, without limitation, grocery stores, drug stores, big box stores, club stores, specialty retailers, convenience stores, dollar stores, petroleum/gas retailers, vending, foodservice, hospitality, and the concessions and fundraising markets.

24. WELCH'S FRUIT SNACKS is the undisputed leader in its class of product and is rated as the number one brand of real fruit snacks in household penetration, loyalty, and purchase

rates.

25.     As a result of the enormous commercial success and years of promotion of WELCH'S FRUIT SNACKS, the WELCH'S FRUIT SNACKS Trade Dress has become extremely well-known to consumers and the trade as identifying real fruit snacks of the highest quality.

26.     The WELCH'S FRUIT SNACKS Trade Dress is inherently distinctive and has also acquired secondary meaning among the relevant class of consumers and the trade.

27.     The WELCH'S FRUIT SNACKS Trade Dress has acquired significant goodwill and represents intellectual property of tremendous value.

**Kervan's History Of Unlawful Conduct**

28.     Defendant Kervan has now been engaged for several years in a concerted plan to siphon off the goodwill that Plaintiffs have spent years in cultivating for the WELCH'S FRUIT SNACKS Trade Dress.

29.     In 2018, Kervan announced that it had entered into a long-term licensing partnership with Sunkist Growers, Inc. ("Sunkist") to introduce a line of gummy fruit candies. The initial version of the packaging introduced for that product closely copied the WELCH'S FRUIT SNACKS Trade Dress, as shown below in the side-by-side comparison of three iterations of the parties' respective products being sold at that time:

18166/038/3666634.3
HF 13625526v.1






9

18166/038/3666634.3
HF 13625526v.1

 

30. As is apparent from the above comparisons, Kervan's original packaging for its SUNKIST FRUIT GUMMIES product lifted the most distinctive elements of the WELCH'S FRUIT SNACKS Trade Dress, arranged those elements in a nearly identical fashion, and combined them with replicas of the taglines associated with WELCH'S FRUIT SNACKS. As a result, Plaintiffs brought suit in this Court against Kervan, Case 2:18-cv-11670-MCA-MAH (the "Prior Action"), alleging that the original Kervan packaging infringed the WELCH'S FRUIT SNACKS Trade Dress under federal and state law.

31. The parties resolved the Prior Action by entering into a settlement agreement effective as of October 23, 2018 (the "Settlement Agreement"), which also provided for the entry of a Final Order and Judgment on Consent (the "Consent Judgment"). The Consent Judgment was signed by the Court and entered on the docket on November 14, 2018.

32. Both the Settlement Agreement and the Consent Judgment prohibited Kervan from using its original packaging design that was the subject of the Prior Action and any

packaging, designs, shapes, colors, trade dress, product configuration or other materials confusingly similar to the WELCH'S FRUIT SNACKS Trade Dress

33. Under both the Settlement Agreement and Consent Judgment, Plaintiffs expressly approved a revised version of the SUNKIST Fruit Gummies product pictured below (the "Revised Kervan Packaging"):



34. Among other things, the Revised Kervan Packaging adopted a different color scheme for the mixed fruit version of the product (moving from blue to yellow), eliminated the central white panel that appears as a prominent feature of the WELCH'S FRUIT SNACKS Trade Dress and replaced the use of stacked fruit cascading along the sides and bottom of the packaging with an array of fruit in a basket at the bottom of the package.

35. Pursuant to paragraph 7 of the Settlement Agreement, if Kervan planned to revise the approved Revised Kervan Packaging, it had the option to submit its new packaging to PIM in order to ascertain whether PIM objected to such packaging as violating its rights.

36. Kervan has recently introduced a new and infringing holiday version of its packaging shown below (the "Kervan Holiday Packaging"). Notably, Kervan did not avail itself of the option provided under the Settlement Agreement, likely because the Kervan Holiday

Packaging reverts to many of the infringing graphic elements that provoked the Prior Action, as shown below:



37. Among other elements, the Kervan Holiday Packaging re-introduces the central white panel that Kervan agreed to eliminate in the Settlement Agreement and Consent Judgment. It further obscures the basket design in the approved Kervan packaging under a dense depiction of fruit, and it positions the individual holiday pieces along the sides of the white panel in a manner that is evocative of the WELCH'S FRUIT SNACKS stacked fruit arrangement. The overall look of the Kervan Holiday Packaging is not only a marked departure from the approved Kervan Revised Packaging, but it is more closely similar to the WELCH'S FRUIT SNACKS Trade Dress than the original Kervan packaging that Kervan agreed to eliminate in the Settlement Agreement and Consent Judgment.

38. To make matters worse, the Kervan Holiday Packaging is also carefully designed to track the presentation found in the corresponding holiday packaging format used for WELCH'S FRUIT SNACKS proximate to the Christmas season. The Kervan Holiday Packaging replicates the number of holiday themed pieces displayed on either side of the

WELCH'S FRUIT SNACKS holiday package, with two on one side and three on the other. It adopts an identical background design featuring specks of white snow against a light background, and locates evergreen branches and other Christmas imagery around the periphery of the package, as shown in the comparison below:



39. The net result of these changes is that the Kervan Holiday Packaging mimics the distinctive layout, graphics and imagery of the WELCH'S FRUIT SNACKS Trade Dress, in both its standard and holiday versions, in ways similar to the original Kevan packaging that led to the Prior Action. Indeed, the Kervan Holiday Packaging tracks the WELCH'S FRUIT SNACKS Trade Dress even more closely than Kervan's original infringing design. These similarities are not accidental, but rather they reflect a studied effort to circumvent the Consent Judgment and copy the WELCH'S FRUIT SNACKS Trade Dress.

40. Despite its undisputed awareness of Plaintiffs' rights and Kervan's commitments in the Consent Judgment, Kervan has instead chosen to move closer to the WELCH'S FRUIT SNACKS Trade Dress in what is, upon information and belief, an effort to draw unlawfully upon the selling power of Plaintiffs' famous intellectual property. Indeed, upon information and belief, Kervan has offered the infringing Kervan Holiday Packaging to the Dollar General

retailer chain as a cheaper knock-off replacement of the WELCH'S FRUIT SNACKS holiday design that PIM had previously offered to the same retailer.

41. The SUNKIST FRUIT GUMMIES holiday product has been and will be targeted and promoted to the same classes of consumers to whom WELCH'S FRUIT SNACKS are marketed and sold.

42. Because WELCH'S FRUIT SNACKS and SUNKIST FRUIT GUMMIES products are relatively low-cost impulse purchases, the consumers purchasing them are apt to be less discerning in distinguishing products and are thus acutely vulnerable to confusion.

43. Kervan's SUNKIST FRUIT GUMMIES holiday product and its associated Kervan Holiday Packaging is likely to cause confusion, mistake and deception among consumers as to the source and origin of such goods, and is likely to deceive the public into believing that Kervan's goods originate from, are associated with or are authorized or licensed by the producers of WELCH'S FRUIT SNACKS, or that Kervan's goods are from the same source, all to the damage and detriment of Plaintiffs' goodwill, reputation, and sales.

44. Upon information and belief, by virtue of its unlawful conduct, Kervan has made and will make substantial profits and gains to which it is not in law or equity entitled.

45. As a result of Kervan's actions, Plaintiffs have been and will be damaged in an amount to be determined at trial.

46. PIM has demanded that Kervan immediately cease any plans to distribute products in the Kervan Holiday Packaging, but Kervan has resisted making any changes to the packaging.

47. Kervan's unlawful activities will cause irreparable harm and injury to Plaintiffs, the reputation and the goodwill associated with the WELCH'S FRUIT SNACKS Trade Dress, and Plaintiffs have no adequate remedy at law.

### FIRST CLAIM FOR RELIEF
### (Violation of Section 43(a) of the Lanham Act)

48. Plaintiffs repeat and reincorporate the allegations contained in Paragraphs 1-47 above as if fully set forth herein.

49. Kervan's promotion and sale of the SUNKIST FRUIT GUMMIES holiday product in the Kervan Holiday Packaging, as described above, violates the WELCH'S FRUIT SNACKS Trade Dress for the WELCH'S FRUIT SNACKS regular and holiday products, and constitutes trade dress infringement, false designations of origin, and unfair competition in violation of section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A).

### SECOND CLAIM FOR RELIEF
### (Breach of the Settlement Agreement and Consent Judgment)

50. Plaintiffs repeat and reincorporate the allegations contained in Paragraphs 1-47 above as if fully set forth herein.

51. The Settlement Agreement and Consent Judgment created pursuant thereto constitute valid and binding contracts.

52. Plaintiffs have fully performed all their obligations under the Settlement Agreement and Consent Judgment.

53. Kervan's promotion and sale of the SUNKIST FRUIT GUMMIES holiday product in the Kervan Holiday Packaging, as described above, constitutes use of packaging, designs, colors and trade dress that is confusingly similar to the WELCH'S FRUIT SNACKS

Trade Dress, in material breach of the Settlement Agreement and Consent Judgment, resulting in damage to Plaintiffs.

### THIRD CLAIM FOR RELIEF
### (Unfair Competition)

54. Plaintiffs repeat and reincorporate the allegations contained in Paragraphs 1-47 above with the same force and effect as if set forth herein.

55. Kervan's promotion and sale of the SUNKIST FRUIT GUMMIES holiday product in the Kervan Holiday Packaging, as described above, constitute unfair competition in violation of the common law of the State of New Jersey.

WHEREFORE, Plaintiffs demands judgment against Kervan as follows:

1. Kervan, its officers, agents, servants, employees, representatives, parents, subsidiaries, affiliates, divisions, successors and assigns and all those persons or entities in active concert or participation with any of them who receive actual notice of the injunctive order, be preliminarily and permanently enjoined from:

    A. Using in any manner the KERVAN Holiday Packaging or any other trade dress or packaging design that is confusingly or deceptively similar to the WELCH'S FRUIT SNACKS Trade Dress, in connection with the sale or promotion of Kervan's goods, including, without limitation, Kervan's SUNKIST FRUIT GUMMIES; and

    B. Committing any other act calculated or likely to cause the public to believe that Kervan or its goods are in any way connected, affiliated or associated with Plaintiffs or their goods, or from otherwise competing unfairly with PIM.

2. Pursuant to 15 U.S.C. § 1118, that Kervan deliver up for destruction all material (including, without limitation, all packaging, catalogs, advertisements, promotional materials, brochures, signs, displays and/or stationary), within its possession, custody or control, either

directly or indirectly, that bears a trade dress, package design or color combination confusingly similar to the WELCH'S FRUIT SNACKS Trade Dress.

3. Pursuant to 15 U.S.C. § 1116(a), that Kervan be directed to file with the Court and serve upon PIM, within thirty (30) days after entry of final judgment, a report in writing and under oath setting forth in detail the manner and form by which it has complied with the provisions set forth in paragraphs 1 and 2 above;

4. Pursuant to 15 U.S.C. § 1117(a), that Kervan be directed to account to Plaintiffs for all gains, profits and advantages derived from its wrongful acts and to pay Plaintiffs all damages sustained as a result of Kervan's unlawful conduct;

5. Pursuant to 15 U.S.C. § 1117(a), that Plaintiffs recover from Kervan the greater of three times the amount of Kervan's profits or any damages sustained by Plaintiffs, together with interest on such amount and the costs of this action;

6. Pursuant to 15 U.S.C. § 1117(a), that Plaintiffs recover from Kervan attorneys' fees and costs in this action; and

7. That Plaintiffs have such other and further relief as the Court deems just, equitable and proper.

18166/038/3666634.3
HF 13625526v.1

| | |
|---|---|
| Dated: Newark, New Jersey<br>December 24, 2020 | Respectfully submitted,<br><br>HERRICK FEINSTEIN LLP<br><br>By: */s/ David R. King*<br>    David R. King<br>    Leah Kelman<br>One Gateway Center<br>Newark, New Jersey 07102<br>(973) 274-2000<br><br>COWAN, LIEBOWITZ & LATMAN, P.C.<br>Richard S. Mandel (to be admitted *pro hac vice*)<br>Jonathan Z. King (to be admitted *pro hac vice*)<br>114 West 47th Street<br>New York, NY 10036<br>(212) 790-9200 |